UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LATRAVIETTE SMITH-WILSON and CHARISMA DEBERRY,

Plaintiffs,

-against-

HORIZON MEDIA HOLDINGS LLC and HORIZON MEDIA LLC,

Defendants.

25-cv-7331 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

Plaintiffs Latraviette Smith-Wilson and Charisma Deberry sued Horizon Media Holdings LLC and Horizon Media LLC ("Horizon"), asserting federal and state employment discrimination, retaliation, and labor law claims. Smith-Wilson was terminated from Horizon in 2025, and Deberry was placed on involuntary leave this year.

Both Smith-Wilson and Deberry agreed to arbitration when they started their employment, so Horizon moved to compel arbitration. But plaintiffs say that they have the right to sue in court under the Ending Forced Arbitration in Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. § 401 et seq. ("EFAA"). For the following reasons, the Court agrees. Horizon's motion to compel arbitration is DENIED.

## BACKGROUND

The facts are taken from plaintiffs' proposed second amended complaint and are accepted as true for purposes of this motion.[1] Smith-Wilson was hired as Horizon's Chief Marketing & Equity Officer in 2022. Dkt. 31-2 ¶ 1. Deberry started working for Horizon in December 2022 in a communications role. *Id.* ¶ 39. Both are Black women, and the complaint details years of differential and discriminatory treatment that they allege they endured at Horizon. This culminated in Smith-Wilson's termination in 2025, and Deberry being placed on involuntary leave earlier this year.

The complaint focuses on mistreatment that Smith-Wilson and Deberry suffered because of (1) their status as Black women, (2) their complaints about their mistreatment, and ultimately, (3) their filing of a lawsuit against Horizon. *Id.* ¶¶ 35–207. In terms of sexually-charged conduct, the complaint points to two instances, one where Horizon CEO and founder Bill Koenigsberg told

[1] Defendants oppose plaintiffs' motion to amend their complaint solely on the grounds that the new allegations must be arbitrated. *See* Dkt. 33. Because the Court disagrees, plaintiffs' motion is granted, and the Court uses the allegations in the second amended complaint for purposes of evaluating the motion to compel arbitration.

Deberry (with Smith-Wilson present) that her job was to "seduce reporters" to garner favorable coverage, that she should "work her magic" and that she "knew what [Koenigsberg] meant," *id.* ¶ 41, and the other where Koenigsberg told Smith-Wilson, "I brought you in here because you got a set of whatever. And I want you to like, you know, think about that." *Id.*

Based on the conduct alleged in the complaint, plaintiffs assert one claim for race discrimination in violation of 42 U.S.C. § 1981; one claim for discrimination on the basis of plaintiffs' "gender and race, including by creating a hostile work environment" in violation of New York State Human Rights Law (NYSHRL), N.Y. Executive Law § 296 et seq.; one analogous claim based on the New York City Human Rights Law (NYCHRL), Administrative Code of the City of New York § 8-107 et seq.; one based on the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 et seq., asserted only on behalf of Deberry (who worked for Horizon primarily from California); claims for retaliation under all of these provisions; and claims for violation of New York Labor Law § 194 and California Labor Code § 1197.5, asserted only on behalf of Deberry, based on Horizon "paying . . . Deberry less than a White employee for equal or substantially similar work." *Id.* ¶¶ 208–245.

Horizon moved to compel arbitration, claiming that both Smith-Wilson and Deberry agreed to arbitrate any disputes with Horizon when they began their employment; they also seek their fees for having to file that motion. Dkt. 12. Plaintiffs don't dispute that they entered into arbitration agreements with Horizon. Instead, they argue that their right to litigate in court is guaranteed by the EFAA, 9 U.S.C. § 401 et seq. That law provides that no arbitration agreement is "valid or enforceable with respect to a case which is filed under Federal . . . or State law and relates to [a] . . . sexual harassment dispute." *Id.* § 402(a). "Sexual harassment dispute" is defined as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal . . . or State law." *Id.* § 401(4).

## DISCUSSION

### I. What Counts as Sexual Harassment?

A central issue on this motion is what counts as "sexual harassment." Does it require sexualized behavior, or does it include any allegation of unwelcome behavior based on a person's gender, even if it's not lewd or sexual in nature?

As dictated by the EFAA, the Court addresses that question first under New York law, and then under California law. First, New York law. Several courts have addressed the question of whether sexual or lewd conduct is necessary to make out an allegation of sexual harassment under New York law. Horizon cites to cases pointing in its direction, *see, e.g.*, *Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 257 (S.D.N.Y. 2024) ("[W]hen sexual harassment claims have been litigated under the NYCHRL, successful plaintiffs have alleged conduct or language of [a] romantic, sexual, or lewd nature . . . ."), and so do plaintiffs, *see, e.g.*, *Owens v. PricewaterhouseCoopers LLC*, 786 F. Supp. 3d 831, 847 (S.D.N.Y. 2025) (concluding that "conduct need not be lewd or sexual in nature to constitute sexual harassment"). Having reviewed the authorities cited by the parties, the

Court finds most persuasive Judge Woods's analysis in *Owens*. Noting that under the NYCHRL (one of the laws that plaintiffs allege Horizon violated) there is no claim for "sexual harassment," Judge Woods explained that based on training materials distributed by the New York City Commission on Human Rights, among other things, the best articulation of what sexual harassment means under the NYCHRL is "unwelcome verbal or physical behavior based on a person's gender, regardless of whether that behavior is lewd or sexual in nature." *Id*. at 846.

Contrary to Horizon's arguments, Judge Woods made clear that this definition doesn't collapse the distinction between "sexual harassment" and "gender discrimination," as it doesn't cover the discriminatory hiring, firing, or alteration of the terms of an individual's employment, or other allegations of unequal treatment, absent evidence of offensive verbal or physical behavior. *See id.* at 847–48. And the standard adopted in *Owens* is consistent with federal law, which counts "sex-specific" and "derogatory" harassment as the kind of harassment that might support a hostile-environment claim, even if not "motivated by sexual desire," as long as the conduct "ma[d]e it clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Gregory v. Daly*, 243 F.3d 687, 695 (2d Cir. 2001) ("[T]his court has found workplace situations discriminatory under a hostile work environment theory where the conduct at issue, though lacking any sexual component or any reference to the victim's sex, could, in context, reasonably be interpreted as having been taken on the basis of plaintiff's sex."); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) (explaining that harassing conduct "need not be motivated by sexual desire, . . . so long as it was motivated by gender" (citation and emphasis omitted)); *see also, e.g.*, Equal Employment Opportunity Commission, "Sexual Harassment," https://www.eeoc.gov/sexual-harassment (last visited Aug. 12, 2026) (noting that "[h]arassment does not have to be of a sexual nature . . . .").

Next, California law. California law defines sexual harassment this way: "'harassment' because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions. Sexually harassing conduct need not be motivated by sexual desire." Cal. Gov't Code § 12940(j)(4)(C); *see also Decloedt v. Radnet Management, Inc.*, 346 Cal. Rptr. 3d 45, 53 (Cal. Ct. App. 2026) (explaining that whether an employee "allege[s] a claim of sexual harassment under [California law] turn[s] on whether his supervisors and coworkers harassed him because of his sex, and not on whether they referred to him with vulgar or sexualized language"). This definition dovetails with the standard adopted in *Owens*, and is consistent with the Supreme Court and Second Circuit's usage of the term in the context of Title VII. That is, sexual harassment need not be sexual in nature, but rather is established if the plaintiff has endured unwelcome verbal or physical behavior based on their gender.

And as to either New York or California law, the Second Circuit has made clear that a claim of retaliation resulting from a report of sexual harassment fits the bill under the EFAA. *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024).

## II. What is a Sexual Harassment Dispute?

The next question is what "sexual harassment dispute" means under the EFAA. This is a defined term, and it doesn't just mean "claims of sexual harassment." Instead, the EFAA broadly defines the term to encompass "a dispute *relating to* conduct that is alleged to constitute sexual harassment under applicable . . . State law." 9 U.S.C. § 401(4) (emphasis added). As Judge Woods observed in another case, the phrase "relating to" has an "expansive" meaning that the Supreme Court and Second Circuit in other contexts have interpreted to mean "to stand in some relation," "in connection with," etc. *Lambert v. New Start Capital LLC*, 799 F. Supp. 3d 258, 287 (S.D.N.Y. 2025); *see also, e.g.*, *Pugin v. Garland*, 599 U.S. 600, 607 (2023) (observing that "[t]he phrase 'relating to' ensures that this statute covers offenses that have 'a connection with' obstruction of justice"); *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87, 96 (2017) (noting, in the preemption context, that "Congress characteristically employs the phrase to reach any subject that has 'a connection with, or reference to,' the topics the statute enumerates").

So in *Lambert*, Judge Woods concluded that one plaintiff's claim counted as a "sexual harassment dispute" even though that plaintiff hadn't personally suffered *any* harassment. It was enough that the plaintiff alleged that the perpetrator (Stein) gave him worse leads, and therefore less opportunity for commissions, on the basis that the plaintiff was a man and "that Stein favored women, specifically [the female victim of sexual harassment], whom he could exploit sexually." *Lambert*, 799 F. Supp. 3d at 287.

For these reasons, and based on the broad language in the EFAA, the question in this case is not whether Smith-Wilson and Deberry have alleged actionable claims for sexual harassment—indeed, New York law doesn't even have such a claim. Rather, the question is whether they have raised a dispute that bears a relation or connection to allegations of unwelcome verbal or physical behavior based on their gender.

## III. What is a Case Relating to a Sexual Harassment Dispute?

As noted above, the EFAA isn't limited to sexual harassment *claims*. It also isn't limited to claims that bear a connection to sexual harassment allegations. Instead, the EFAA bars the enforcement of arbitration agreements as to any "*case* which is filed under Federal . . . or State law *and relates to* the . . . sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). So we have a double dose of "relates to." The EFAA sweeps in any case that "relates to" a sexual harassment dispute, which in turn is defined as any dispute "relating to" sexual harassment.

The parties don't dispute that given this expansive coverage, if both Smith-Wilson and Deberry have alleged a "sexual harassment dispute," then both are entitled to litigate in court all their claims, even those that aren't themselves about any offensive verbal or physical behavior (like Deberry's labor law claims). *See, e.g.*, *Lambert*, 799 F. Supp. 3d at 281; *see also Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558–61 (S.D.N.Y. 2023).

## IV. What Standard of Review Applies to an EFAA Dispute?

There's one final threshold matter to address: the standard of review of the complaint's allegations on Horizon's motion to compel. The question is whether a plaintiff's allegations of sexual harassment must meet the plausibility bar of *Twombly* and *Iqbal*. Several courts have addressed this issue, with most holding that the allegations must meet that bar. *See, e.g.*, *Singh*, 750 F. Supp. 3d at 253–54 (collecting cases). To the best of this Court's understanding, these courts require the plaintiff to allege a "sexual harassment claim," to which the court then applies the familiar *Twombly* and *Iqbal* standards. *See, e.g.*, *id*. (referring to "sexual harassment claims").

But for the reasons stated above, this approach disregards the language of the EFAA. The statute isn't limited to "sexual harassment claims," but rather defines "sexual harassment dispute" in a more expansive way, as any "dispute" "related to" conduct "alleged to constitute" sexual harassment. For this reason, to the extent that courts have used *Twombly* and *Iqbal* as a way of smuggling in a requirement that a plaintiff allege a plausible "sexual harassment claim," there's no basis for such a requirement. On the other hand, if courts are merely saying that the allegation of conduct constituting sexual harassment needs to be "plausible," that is, something more than an unadorned accusation that wouldn't be credited under *Twombly* and *Iqbal* ("he sexually harassed me" or the like), then fair enough. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). But applying this bedrock principle would likely make no difference in most cases, and it's not what courts appear to have meant when addressing this standard-of-review issue under the EFAA.

For these reasons, the Court agrees with Judge Liman's cogent and persuasive analysis that plausibility review—at least the way that most courts have framed it—would be inapplicable in the context of a motion to compel arbitration involving the EFAA. *See Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 536–42 (S.D.N.Y. 2024). Instead, a plaintiff must solely allege: "(1) a dispute; (2) conduct and that such conduct, if established, constitutes sexual harassment pursuant to an applicable Federal, Tribal, or State law; and (3) that the dispute relates to such conduct. The alleged conduct need not ultimately be found to actually constitute sexual harassment so long as the plaintiff alleges that the conduct constitutes sexual harassment." *Id*. at 536–37.

Of course, as Judge Liman recognized, a defendant can file a motion to dismiss and challenge the plausibility of any claim alleged by the plaintiff—whether it relates to an allegation of sexual harassment or not. Horizon can do just that in this case. But that review has no place in the context of evaluating a motion to compel arbitration involving the EFAA. *See id*. at 541 ("[T]he plausibility standard of Rule 12(b)(6) is not a test for whether a court may hear a case. It is an optional tool, and only one of several optional tools, by which the adverse party can seek to have a complaint dismissed after jurisdiction is established. The fact that the victim of sexual harassment who fails to state a legally sufficient claim for sexual harassment is nonetheless relieved of forced arbitration in a case that relates to the sexual harassment is not an affront to Congress' intent but rather is a feature of the congressional design.").

## V. Applying These Standards, Are Smith-Wilson and Deberry Entitled to Litigate Their Claims in Court?

The final issue is how these standards cash out in terms of plaintiffs' claims. Here, plaintiffs plainly allege conduct that would constitute sexual harassment, or rather, unwelcome verbal behavior based on their gender. They point in their complaint to two statements made by Horizon's founder and CEO Bill Koenigsberg: One to Deberry, with Smith-Wilson present, that her job was to "seduce reporters," "work her magic," and that she "knew what [he] meant"; and another to Smith-Wilson that "I brought you in here because you got a set of whatever. And I want you to like, you know, think about that," Dkt. 31-2 ¶ 41.

And plaintiffs' entire case is "related to" this alleged conduct. On their view, Horizon, and Koenigsberg in particular, were hostile to plaintiffs because of their status as Black women,[2] and Horizon's tokenization of plaintiffs was reflected in a variety of verbal abuse, including the sexually-charged statements described above, made by the company's founder no less. This alone would give plaintiffs the benefit of the EFAA under the standards articulated above.

But there's more in the complaint. To give just a few examples, the complaint alleges other unwelcome verbal behavior on Koenigsberg's part directed at both plaintiffs. As to Deberry, the complaint notes that on "multiple . . . occasions," Koenigsberg responded to her suggestions as needing to be expressed in a more "articulate" way, comments that were not directed at White male colleagues. *Id.* ¶ 44; *see also id.* ¶ 85 (Koenigsberg belittled Deberry's contributions and attributed limited traction of technology offering to "Deberry's alleged inability to understand or articulate its value"). Similarly, in 2025, Koenigsberg "condescendingly suggested [Deberry] hire someone outside the organization if drafting . . . was 'too hard' for her." *Id.* ¶ 127. As to Smith-Wilson, Koenigsberg "developed a pattern of lobbing unsubstantiated criticisms" at Smith-Wilson or her team, and "dismiss[ing] her factual assertions, even chastising her, and referring to her as defensive." *Id.* ¶ 50; *see also id.* ¶ 84 (at a November 25, 2024 meeting, Koenigsberg dismissed Smith-Wilson's goal as unrealistic and "ridiculous," but did not direct the same criticisms at a White man who offered a similar goal). At the November 25 meeting, Koenigsberg ignored Deberry and then when she announced her presence, exaggerated the pronunciation of her name,

---

[2] Plaintiffs don't allege that Horizon solely discriminated against them because they were women. Rather they say that the company and its executives were hostile to Black women in particular. Horizon doesn't argue that this makes a difference for EFAA purposes, so any such argument is waived. In any event, the Court sees no reason why harassing conduct focused on the combination of race and gender would, for that reason alone, fall outside of the EFAA's coverage. If a supervisor victimized an employee because of his penchant or disdain for women of a particular race, even if he had no such views as to other women, the EFAA would presumably apply just the same. *Cf. Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 109–10 (2d Cir. 2010) (noting that "where two bases of discrimination exist, the two grounds cannot be neatly reduced to distinct components" and that "a plaintiff's discrimination claims may not be defeated" merely because only a "subset" of a protected class is discriminated against).

"'Cha-RIS-ma,' in a patronizing tone." *Id.* ¶ 87. The complaint alleges that Koenigsberg was so hostile during this meeting that "Deberry became physically ill and vomited." *Id.* ¶ 88.

Koenigsberg also "threatened" Smith-Wilson in one-on-one meetings, telling her "[w]hether we agree or disagree on the tech side, there will be a test. You may not like that there will be a test." *Id.* ¶ 86. He also told Smith-Wilson that she "serve[d]" individuals on the leadership team who were White men, even though they were Smith-Wilson's peers. *Id.* ¶ 90; *see also id.* ¶ 75 (noting that a couple months earlier, Koenigsberg had once again told Smith-Wilson that she was there to "serve our leaders," which he corrected to "service" after Smith-Wilson raised her eyebrows). Smith-Wilson complained to Koenigsberg about his "demeaning and dismissive language." *Id.* ¶ 91. And in March 2025 when Deberry won a major industry award, Koenigsberg "conveyed a thinly veiled criticism, questioning the legitimacy of the award and subsequently imposing a requirement that Deberry submit all future award nominations for prior review and approval," conduct that differed from his response to awards received by White or male colleagues. *Id.* ¶ 100.

True enough, the verbal conduct of Horizon executives, including Koenigsberg, is just one part of plaintiffs' claims; the gravamen of the claims is the differential treatment that plaintiffs endured—being treated less favorably than White male colleagues, having their contributions overlooked and ignored, being paid less, and ultimately being pushed out because of Horizon's hostility to Black women and in retaliation for their complaints. But without question, their claims are also related to the verbal denigration that they were routinely subjected to by Koenigsberg and other executives, and that's what matters under the EFAA as it is drafted.

The Court is aware that in *Waiguchu v. Morgan Stanley & Co., LLC*, 2026 WL 892069, at *10–11 (S.D.N.Y. Apr. 1, 2026), Judge Woods, the author of *Owens*, rejected application of the EFAA in a case that involved differential treatment and "microaggressions" similar in at least some respects to the conduct alleged in this case. Putting aside whether the Court agrees with *Waiguchu* or not, in that case Judge Woods focused on the absence of any verbal behavior that was directed to the plaintiff's gender (even if it was in fact motivated by gender hostility), whereas here the complaint does allege such conduct, including Koenigsberg's statements that both Deberry and Smith-Wilson were at the company because of their sexual assets, Dkt. 31-2 ¶ 41, and other comments focusing on stereotypical tropes, such as plaintiffs needing to be more "articulate" or being "tested" on technical material, *id.* ¶¶ 44, 85–86, Smith-Wilson needing to be kept out of meetings to avoid "hurt feelings," *id.* ¶ 117, and comments suggesting that plaintiffs were at the company because of "DEI," *id.* ¶¶ 51, 78, 106.

## CONCLUSION

For these reasons, Horizon's motion to compel arbitration is DENIED. Plaintiffs' motion to amend their complaint is GRANTED. Plaintiffs should promptly file their amended complaint, and Horizon's response will be due 21 days after filing. The parties should meet and confer on a proposed discovery schedule and file it on or before the date of Horizon's response.

The Clerk of Court is respectfully directed to close Dkts. 12 and 29.

SO ORDERED.

Dated: August 18, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge